Henry E. Albachten and Rita C. Albachten, et al. [1] v. Commissioner. Albachten v. Commissioner
Docket Nos. 71177, 71178, 72185, 72186, 72687-72689, 77003-77006.
United States Tax Court
T.C. Memo 1969-124; 1969 Tax Ct. Memo LEXIS 173; 28 T.C.M. (CCH) 666; T.C.M. (RIA) 69124; June 18, 1969 Filed Myron A. Weiss and Robert H. Feldman, for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent determined deficiencies in petitioners' 1952, 1953 and 1954 income tax, and additions thereto, as follows: Docket No.
Year
Petitioners
Deficiency
50% addition for fraud under Sec. 6653 Code of 1954 or Sec. 293(b) 1939 Code
Total additions Sec. 294(d)(1)(A) (failure to file estimates) and Sec. 294(d)(2) (filing substantial under- estimates) 1939 Code
1 52,059.64
71177
1953
Henry E. and Rita C. Albachten
244,877.90
123,285.02
$36,731.69
71178
1954
Henry E. Albachten
507,557.86
253,778.93
77,402.58 667 Respondent also asserted transferee liability against petitioner Henry E. Albachten in the following dockets: *174 72185, 72186, 72687, 72688, 72689, 77003, 77004, 77005 and 77006. Henry E. Albachten filed petitions in these transferee cases denying transferee liability. After several continuances, all of the above dockets were called for trial. There was no appearance by Henry Albachten or Rita Albachten in any of the dockets. Respondent then announced to the Court with respect to the transferee cases that the "government will not undertake to prove transferee liability in these docketed cases." And on brief respondent concedes "Henry E. Albachten is not liable as a transferee." This leaves only docket No. 71177 involving deficiencies in the income tax and additions thereto for Henry E. Albachten and Rita C. Albachten for the years 1952 and 1953 and docket No. 71178 involving a deficiency in the income tax and additions thereto for Henry E. Albachten for the year 1954. As stated, there was no appearance for petitioners in either docket. The deficiency determined in each docket is presumptively correct and since no evidence was introduced disputing the deficiencies respondent is entitled to the decision with respect to the deficiencies in these two dockets. As will appear later, respondent *175 is entitled to the decision for additions to tax for failure to file estimates for some of the years involved. The only issue remaining was the issue of fraud in docket Nos. 71177 and 71178 on which respondent had the burden of proof. The sufficiency of respondent's evidence to establish fraud in these two dockets is the issue that we are to decide. Findings of Fact Henry E. Albachten (also referred to herein as "petitioner") and Rita C. Albachten, were husband and wife in the years 1952 and 1953. Their legal residence for these years as of the date their petition was filed with the Tax Court was at Los Angeles, California. The legal residence of petitioner for the year 1954 as of the date the petition was filed with the Tax Court was at Los Angeles, California. Henry E. and Rita Albachten filed joint federal income tax returns for the taxable years 1952 and 1953 on a cash basis method of accounting with the district director of internal revenue at Los Angeles, California. Petitioner was divorced from Rita in 1953 and he filed a separate federal income tax return for the taxable year 1954 on a cash basis method of accounting with the district director of internal revenue *176 at Los Angeles, California. Petitioner albachten and one Tony Parravano were business associates in the building business. They operated some of their business through some unnamed corporations. During 1952 and 1953 Albert Stanger, a lumber dealer, sold lumber to Albachten and Parravano and to their corporations and the corporations purchased cement and roofing materials from Stanger. Stanger ceased doing business with Albachten and Parravano and their corporations in late 1953 or early 1954. Stanger's bank accounts in the Compton National Bank in Compton, California and the Bank of America, Hollywood Branch, contained the following cancelled checks: Bank Account
Payee
Date
Amount
Compton
Frank Stevens
7-31-52
$ 4,055.49
Compton
H. Albertson
7-31-52
3,478.23
Compton
A. Bailey
7-31-52
4,466.28
Bank of America
A. Bailey
9-11-52
7,500.00
Bank of America
H. Albachten
9-11-52
1,557.45
Bank of America
A. Bailey
9-11-52
7,500.00
Compton
H. E. Albachten
4-22-53
50,000.00
Respondent did not sustain his burden of proving that part of the underpayment of tax for each of the years involved was due to fraud. Opinion Respondent had *177 the burden to prove by clear and convincing evidence that a part of the underpayment of tax for each of the years involved was due to fraud. Charles E. Mitchell, 32 B.T.A. 1093 (1935) affd. 303 U.S. 391 (1938) and Arlette Coat Co., 14 T.C. 751 (1950). In his answer filed in docket No. 71177 respondent alleged that during all or a portion of 1952 and 1953 petitioner Albachten was a controlling stockholder and officer in 26 named corporations. The answer goes on to allege: "That petitioners, with intent to evade and defeat tax, failed to 668 report income * * * as follows: (a) Funds of corporations controlled by petitioners which were diverted to petitioners' personal use * * *, (b) Amounts paid to 3rd parties by corporations controlled by petitioners in excess of true cost of services or materials supplied by such parties, which excess amounts were 'kicked back' to petitioners * * *." It is respondent's position with respect to docket No. 71177 and the years 1952 and 1953 that the evidence he introduced established that petitioner and his business associate Parravano syphoned funds in equal amounts from corporations they controlled, to *178 their personal accounts and also caused the discounts to which their corporations were entitled paid to them in equal amounts. And respondent contends the evidence shows petitioner failed to report the sums so received as income in his 1952 and 1953 returns. There is no specific evidence in the record that petitioner owned stock or was an officer in any corporation and no evidence concerning the 26 corporations named in the answer. There is general testimony by the lumber dealer, Stanger, that "[they] (meaning Albachten and Parravano) were building contractors." When asked, "[Did] they operate through corporations?" Stanger answered, "Yes, they did." Stanger was respondent's only witness with respect to 1952 and 1953. By his own story he was a co-conspirator in a plan to help Albachten and Parravano and their corporations fraudulently evade their income taxes. He testified that three of the 1952 cancelled checks from his bank account that are in evidence represent corporate funds diverted to petitioner and the other three 1952 checks represent discount payments to petitioner. In answer to a series of leading questions Stanger said the first three checks dated July 31, 1952, in *179 the amounts of $4,055.49, $3,478.23 and $4,466.28 totaling $12,000 were delivered to petitioner as his one-half share of $24,000 which had been given to him by Albachten and Parravano. He said Albachten and Parravano had given him "some of their corporation checks" in the amount of $24,000. He said they told him this was being done to divert money from the corporations and also as a means of overstating costs on the corporate books. He said he assumed he was the agent whereby Albachten and Parravano accomplished this purpose. There is nothing on any of the three checks to indicate they were ever cashed by Albachten. He was not named as payee in any of the checks. His name does not appear as an endorser on any of the checks. When Stanger was asked if Albachten had directed him to make the checks payable to Frank Stevens, A. Bailey, and H. Albertson, he answered: "Yes, he did." Stanger testified that the corporations owned by Albachten and Parravano purchased lumber and cement and other supplies from him. He said the companies were billed for amounts that did not reflect discounts; that the companies paid the bills and he paid the amount of discounts to Albachten and Parravano in *180 equal portions. Stanger testified the two checks to A. Bailey dated September 11, 1952, each for $7,500 on his bank account in the Bank of America, Hollywood Branch, represented such diversion of discounts. He was not very positive about this and he could not specifically remember that Albachten told him to make the checks payable to A. Bailey. He "would assume" Albachten directed him as to whom he was to name as payee of the checks. He indicated Albachten would not want the checks to be in his name. Stanger testified the other check that was dated September 11, 1952, and made out to petitioner in the amount of $1,557.45 also represented diversion of discounts. He indicated the name Bailey was used to conceal the payment that was being made to Albachten. He was not asked to explain why Albachten's name could be used on the check for $1,557.45. He said all three checks were for the same purpose, namely, to divert discounts to which certain unnamed corporations were entitled, to Albachten. Respondent argues that the remaining check dated April 22, 1953, to H. E. Albachten for $50,000 represented what respondent calls another check exchange transaction similar to the checks totaling *181 $12,000 dated July 31, 1952. This is the only 1953 transaction. The following is Stanger's testimony with respect to this check: Q. What is the date on that check? A. April 22, 1953. Q. At or about that time, did you receive $50,000 in four checks of various amounts from the Albachten-Parravano corporations? A. Yes, I did. 669Q. What is the amount of that check? A. $50,000. Q. Was this a method utilized by Albachten to divert funds from his corporations into his own personal account? A. Yes. There is no explanation of why this last check could be drawn directly to Albachten and the other checks in the so-called check exchange transactions could not be drawn to him. Also, here, according to Stanger he received the entire amount the corporations turned over to Stanger while in the earlier check exchange transactions he got one half. Stanger's entire testimony and the evidence of all of these cancelled checks in his bank account do not constitute the required clear and convincing proof of fraud. In the first place, Stanger was not a very forthright witness. Almost all of his testimony consisted of answers to leading questions. He was a businessman but he explains *182 that seven cancelled checks in his two bank accounts did not represent any of his business transactions. He said the checks were payments to Albachten and merely represented check exchange or discount diversion transactions. There is not any documentary evidence to indicate that five of the checks ever conveyed any funds to Albachten. In view of Stanger's testimony that he was willing to aid in what he knew were tax fraud transactions his testimony should have been corroborated insofar as it was possible to have it corroborated. Five of the seven checks furnish no corroboration at all. They do not show they had any connection with petitioner. The other two that were made out to Albachten do not exactly corroborate Stanger. One was on his business account and he admits he sold lumber to petitioner. The other is on his personal account but his evidence is inconsistent in that the earlier transactions which he said were check exchanges were concealed by naming a payee other than petitioner. Here, this check, which he said was a check exchange, was not concealed at all. It was made out to petitioner. It is apparent from respondent's leading question that he had knowledge that the source *183 of this $50,000 consisted of four corporate checks. And yet respondent saw fit not to introduce any evidence as to such payments. It fairly appears that respondent could have shown the earlier deposits of corporate checks to which the checks in evidence were related. Or there could have been some evidence of Stanger's business records that would relate the discount payments to certain purchases. Or there could have been some evidence of the corporation records of the corporations that allegedly made the payments to Stanger or that paid the undiscounted bills. There is testimony of a revenue agent that he and two other agents audited the corporation returns of the Albachten-Parravano corporations. Evidently they examined the books and records of the corporations. Such examination should have disclosed some corroboration for Stanger at least as to the discount diversions. Without further analysis, we hold respondent's evidence of fraud for the years 1952 and 1953 was wholly insufficient. There is just no evidence at all to establish fraud in the year 1954. Respondent seems to realize this. On brief he says: "Obviously, petitioner-Henry's fraudulent schemes continued into the year *184 1954." We hold respondent failed to sustain his burden of proving fraud with respect to 1954. There is no issue of the statute of limitations with respect to the deficiencies determined. When this case was submitted the Court indicated respondent would be entitled to a decision against petitioners in the two dockets with respect to the deficiencies. The deficiencies were determined in 1957. It appears, however, that for the years 1953 and 1954 respondent determined total additions to the tax under Sec. 294(d)(1) (A), I.R.C. 1939, and Sec. 294(d)(2), I.R.C. 1939 in the amounts of $36,731.69 and $77,402.58, respectively. A taxpayer cannot be subjected to the additions under both statutes. In Commissioner v. Acker, 361 U.S. 87, decided by the Supreme Court in 1959, it is held that the failure of a taxpayer to file declaration of estimated tax under Sec. 294(d)(1)(A) subjected him to addition to tax for failure to file, but did not subject him to further addition for filing of a "substantial underestimate" of tax under Sec. 294(d)(2), I.R.C. 1939. Decisions will be entered for petitioner in docket Nos. 72185, 72186, 72687, 72688, 72689, 77003, 77004, 77005, and 77006. *185 Decision will be entered for respondent and against petitioners Henry E. Albachten and Rita C. Albachten in Docket No. 71177 for the amounts of the deficiencies determined by respondent for the years 1952 and 1953 plus the addition to tax 670 under Sec. 294(d)(1)(A), I.R.C. 1939 for the year 1953. Decision will be entered for respondent and against petitioner Henry E. Albachten for the year 1954 for the deficiency plus the addition to tax under Sec. 294(d)(1) (A), I.R.C. 1939. Footnotes
1. Cases of the following petitioners are consolidated herewith: Henry E. Albachten, Docket No. 71178, Henry E. Albachten, Transferee, Docket Nos. 72185, 72186, 72687, 72688, 72689, 77003, 77004, 77005, and 77006.↩